THE SHOEMAKER PIANO MANUFACTURING CO. *v.*
HENRY BERNARD *et als.*

1. PARTNERSHIP. *New partner. Pre-existing' debts. Liability therefor.* In
order to hold an incoming partner bound for the pre-existing debts of
a firm, he must become liable for such debts by either expressly as-
suming them upon proper consideration, or by otherwise dealing with
the creditor in such a manner as to create an implied obligation and
duty to pay the same in common with the old firm. And in either
aspect of the rule, the assent of the party to be charged, and the con-
sent of the creditor to accept the new liability, are necessary to the-
new partner's liability.

2. SAME. *Same. Entries on partnership books.* Where debts of an old
firm are charged to the new firm on its books, the rule that entries on
the books of a firm shall bind the partners has no application to the
liability of the new partner for debts of the old firm so charged, un-
less he had access to the books and was thereby enabled to know what
had been done. In such case his consent to be bound will be implied
if he fail to object at the time when he first has notice of such entries.

3. SAME. *Same. Same.* The principle that *prima facie* a partner is as-
sumed and held to know what is on the books of the firm where he
has the means of access to the same, is an inference of fact always
drawn when the circumstances present a case for it, but is not so con-
clusive that it cannot be rebutted.

4. SAME. *Liabilities of partners to third parties.* Where B., who had four
pianos for sale as agent of the makers, formed a copartnership with-
McC., and put them in as part of the stock of the new firm, without
notice on McC.'s part that they did not belong to B., it was held that
B. could communicate no higher title than he had, and that the firm
were liable for same to the makers.

---

FROM SHELBY.

---

Appeal from the Second Chancery Court of Shelby-
County.    S. P. WALKER, Chancellor.

ESTES & JACKSON for complainant.

McKISICK & TURLEY for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed against both Bernard and McClure, the one a citizen of Shelby county, the other of Davidson county, but the real purpose is to hold James A. McClure responsible, as incoming partner, for the debt and liability of Henry Bernard, contracted with complainant before the formation of the partnership of Bernard and McClure, while the said Bernard was doing business alone in the city of Memphis. Bernard had before this date, October, 1866, carried on for some years a music store, and had become indebted to complainant in about the sum of $4,680. In October, 1866, he went to the city of Nashville, with a view of getting James A. McClure to take an interest in his business, which was agreed upon between the parties. That partnership continued until about 15th of November, 1877, when it was dissolved, McClure, who was the monied partner, evidently a man of credit and means, took the assets, and was to wind up the concern by paying its debts.

The bill goes on the idea that McClure, or rather the new firm, had assumed by contract with Bernard, at the formation of the partnership, the existing indebtedness of Bernard, and then, that on dissolution, he had taken the assets and was to pay the debts of the firm, this debt of complainant being one of them.

The latter proposition depends on the result arrived at on the former, as McClure only assumed to pay the debts of the firm on dissolution, so that his liability in this aspect of the case turns on the question

whether the debt of complainant was assumed, or agreed to be assumed, and had become a liability of the firm of Bernard & McClure. That the debts were assumed by the new firm is definitely alleged in the bill, but is as positively denied in the answer of McClure. His oath being waived, the answer makes but an issue, and complainant is required to make out his case by a reasonable preponderance of proof.

. The rule of liability of an incoming partner for debts contracted before his connection with the firm, is distinctly stated by Judge Story. After giving a general rule that he is not so liable, he adds: "But although this is the clearly established doctrine, yet it does not follow that an incoming partner may not become liable for such debts, by expressly assuming them upon proper consideration, or otherwise dealing with the creditor in such a manner as to create an implied obligation and duty to pay the same in common with the old firm. The presumption of law is indeed against any such liability, but this presumption, like any other, may be removed by due and satisfactory proofs of the contrary intention and agreement. Thus, for example, if the balance due from the old firm be, *with* consent of the creditor and all the new firm, carried to the debit of the new firm, the latter deriving a benefit therefrom as a credit or deposit, it is very clear that the new firm will be bound thereby and therefor, as their own debt. *A fortiori* the same rule will apply when it is an express stipulation of the partnership, between the old

firm and the incoming partner, that the new firm shall assume all the outstanding debts of the firm and shall pay the same, and the creditor shall assent thereto, and take the new firm as his debtors." Story on Partnership, sec. 152.

In either aspect of the rule it stands on the principle of assent by the party to be charged and consent of the creditor to accept the new liability. Assuming, but not deciding, the assent of the creditor may be given by suing to enforce the debt, we examine the facts of this case.

Holding the correct principle of liability to be the assent of McClure to such liability, either expressly, or to be implied under the above rule, the first question is, did McClure expressly agree to such liability, as is charged in the bill?

The proof of complainant as to an express contract entirely fails to make out the case alleged. It stands on the testimony of Bernard, who, it plainly appears, is an anxious witness in favor of this view. He does not stand before us as entirely disinterested on this question; at any rate, the circumstances surrounding him tend to raise decided suspicions of bias against defendant McClure's case. He had charge of the books and the management of the business in Memphis. He had made entries in the books tending to show that these debts were assumed by the new firm. He was evidently not prosperous in his business. He was liable for considerable debts, this being probably the largest. To get these debts shifted off on the new firm was desirable, to say the least of it.

On this subject, in answer to the question on cross-examination, "What understanding did you have with McClure about your stock of goods and other assets, and about your debts?" he says, "Well, there was *no* real understanding, because the thing was done so hurriedly; my understanding was that my assets over my debts would amount to $2,500, and that it would take $2,500 for him to become a partner." In answer to the direct question by complainant, as to what were the terms of the contract between them, he says: "Well, sir, the terms were verbal, and it has been so long ago that I do not know that I can remember *accurately*, but I can tell as near as I know." After telling of his meeting McClure in Nashville, that he informed him in a general way without going into details, that he thought his assets, that is, the surplus after paying his liabilities, would be about $5,000 (this last he says he distinctly remembers), and that it would require this sum, $2,500, to make McClure an equal partner, McClure agreed to go into the business, and gave him $1,500 in money, afterward $800, and there was $200 at another time, and so the partnership begun. It is obvious that this fails, if taken alone, to make out an affirmative undertaking that the firm should assume his individual liabilities pre-existent to this period. It is not even shown that such a proposition was submitted to McClure; and from the whole case, we would infer if such a proposition had been submitted, he would promptly have rejected it. It would be most unreasonable that he should have assumed liabil-

Piano Co. *v.* Bernard.

ities for another, without even a pretense of an accurate statement, only a rough estimate, as to what they might amount to, as compared with his assets.

McClure's deposition is taken, and he most positively denies such assumption, and swears that Bernard told him, in answer to the question whether he was in debt for any of his stock, that he was not, and added, "that few people could get in debt now." Take this denial as being equal to Bernard's uncertain statement, and no more, and the case would fail. But when we remember that as soon as McClure went to Memphis and saw the entries on the books purporting to convey the idea of the firm being liable for these debts, that he at once objected to and repudiated such a liability, and promptly dissolved the firm, directing the entries to be so changed, at once, as to relieve the firm from such liability, in pursuance of what he claims was his original understanding, the scale is turned at once in his favor beyond question. We could not conclude on this state of facts that he had so agreed, except by an arbitrary assumption of the fact without the support of proof. This we cannot do.

The principle we have announced as the basis for the above conclusion is the same precisely as laid down by McFarland, J., in *Warlitzer* v. *Bernard & McClure*, MS., a case, we believe, growing out of this same contract of partnership.

It is, that McClure must have agreed in consideration of the partnership to assume the pre-existent debts of Bernard. He waived the question as to whether the

creditor must not have assented to such assumption.
The agreement, however, he says, must be affirma-
tively proven, and the burden is on the complainant
to do so.

But it is insisted the liability of McClure is fixed
by the entries made on the books of the firm, by
which the assets were transferred to the firm, and the
debts and liabilities of Bernard charged against the
firm.   Be the effect of these entries as they may, and
assuming such to have been their effect, the rule that
entries on the books of a firm shall bind the part-
ners, can have no application to this case, so far as
McClure's personal conduct goes, for the reason given
by this court, 2d Hum., 461, that "it is evident this
must mean to refer to a case where the copartner has
access to the books, and being enabled by these en-
tries to know what has been done, his consent will
be implied unless he make objection at the time."
In this case McClure was in Nashville, and did not
see, nor know of these entries until November, 1877,
when as we have said, he promptly disaffirmed them,
so far as his liability was affected by them.   We
certainly see nothing in this record by which an es-
toppel can be brought to bear on him by any con-
duct calculated to mislead complainants into the belief
of an assumption of Bernard's debts to their injury.
The proof does not clearly, if at all, show that he
knew of the existence of these debts.

The principle on which the assumption by the
party is based by Judge Story is, as he says, section
153, "that a new promise has been made by the en-

tire firm in respect to the old debt, with the consent of the old partners, as well as of the creditor, and amounts to a novation, as it is called in the Roman law, and thus the new partners will be chargeable with the debt." He adds, however, "But such adoption or ratification of the new promise by the new partner must be clearly shown, otherwise it will not be obligatory upon him, and it cannot be inferred from the mere act of joining in the partnership, without other circumstances in aid of the inference."

It is insisted, however, that M. H. McClure, the brother of respondent, stood in his place, and represented him in the firm at Memphis, and that he had knowledge or means of knowledge of the entries on the books, and that it was the same as if James A. McClure had been present, and thus had assented, or would be presumed to have assented to the entries on the books, and therefore he is bound for them. We see the plausibility of this view and have felt its force. But we think the principle that underlies the case in 2d Hum. as well as the other cases on this subject, is, that *prima facie* a partner is assumed, and will be held to know what is on the books of the firm, where he has the means of access to the books. This is an inference of fact, and one always drawn, when the circumstances present a case for it. But certainly this inference is not so conclusive that it cannot be rebutted in a case like the present. The proof does show that the brother was to represent Jas. A. McClure in the management of the business in Memphis, but it is also evident that he actually acted only as a

salesman, and the control of the business was by con-
tract to be in the hands of ' Bernard.    It is further
shown as a matter of fact, that M. H. McClure did
not have access, or at any rate, never made an entry
on the books containing these entries, nor did he
know of them, until a short time before the dissolu-
tion.    In fact, he says they were kept in the safe,
and he only saw them by accident, in the absence of
Bernard, when he had gone out to meet his brother
at Grand Junction, and thus for the first time ob-
tained this information.    The proof tends to show
that the books were not written up until a few weeks
before the dissolution, though this particular entry had
probably been made.    We think the proof very satis-
factorily shows, that in fact M. H. McClure did not
know of or see these entries until the time mentioned,
and that he did not assent to them.    It is also cer-
tain that the condition of complainant in reference to
this particular debt has in nowise been changed by
what has been done by Bernard in making these en-
tries.    They had the security of their original debtor,
as before.    No contract under the rule cited from
Judge Story had been entered into between the cred-
itor and the new firm, by which a novation of the
debt had taken place.

The case stands alone on the entry made by Ber-
nard, as we have shown, contrary to the agreement
entered into at the formation of the partnership.    The
creditor must get his claim through the act of Ber-
nard—as between Bernard and McClure it would have
been and was a fraud on his part to charge the debt

due from him to the new firm. It follows, the complainant seeking his relief through this fraud, ought not to stand higher than Bernard, and if M. H. McClure did not in fact know of the entries, the principal ought not to be bound, nor would the principal have been bound under this state of facts had he been in the city of Memphis in place of his brother. The entries would have been *prima facie* against him, a strong case, but when it clearly appeared he did not keep the books, had no reason to believe such entries would be made on them, on the contrary, was misled to think it impossible, by the statement that no debts existed, the *prima facie* case would have been rebutted, and no contract or liability could be inferred against the truth of the case.

The point urged, that the entry of the amount paid by McClure for the half of the establishment, say near $2,500, being left standing on the books, by which it would appear this $2,500 went into the firm and the firm got the benefit of it, and that this was not directed to be charged off, or a contra charge made by McClure after the dissolution, we do not think fixes him with liability, as it is not shown that this money actually went into the business and to the use of the firm; on the contrary, we think it did not. The fact might have furnished a basis for an account and settlement of the firm between the parties, if the money had been so used, and if it would have given a balance in favor of Bernard on such settlement, his individual creditors might on a proper bill have reached it, but this bill does not go on such ground. The

entry cannot be held, by being allowed to remain on the books, to be an adoption of and assumption of the liabilities of Bernard. This can only be done by a contract, express or clearly implied from all the facts, as in the case of any other obligation. The assent of a party, with the intent to be bound, is certainly an essential element of all contracts, whether in the case of partners or others; no such assent to this liability can be fairly made out from the facts in this record. The contrary very satisfactorily appears.

We think complainant must fail as to any liability of McClure on the pre-existing debt of Bernard, and reverse the Chancellor's decree to that extent.

But there is one other feature of the case, on which complainant is entitled to recover. It is shown as claimed in the bill, that pianos of the complainant were on hand, four of them at least, at the time of the formation of the partnership. These pianos went into the stock of Bernard & McClure. The facts are, that Bernard was the agent of complainant for the sale of these pianos. They sent them to him, he was charged with them as per an invoice furnished, and was to account at these prices, but was to have all above this price as his profits. If he failed to sell, the pianos were to be returned. Respondent claims, he bought these pianos as part of Bernard's stock. We do not think this claim sustainable. Bernard had no right to them except as agent, and defendants or the firm could get no better title than he had under the facts of this case. An account must be had of these pianos at invoice cost, and McClure

will be decreed to pay this sum, that is, in settlement of the firm debts, being allowed credit for all payments made by the firm on this account after its formation. If other pianos were furnished the firm during its existence after October, 1866, the firm will be liable for them. We do not enquire or settle how that is, as an account will have to be taken, and the matter adjusted on the basis of the report of the Clerk on the facts.

A decree will be entered in accord with this opinion. The costs of the court below will be paid one-half by each party; in this court, it will be divided between complainants and McClure, so that complainants pay two-thirds and McClure one-third of the same.